# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 16-195 |
| ) | Judge Nora Barry Fischer |
| ANGELO EVERETT, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

I. INTRODUCTION

This matter is before the Court on a motion to suppress evidence filed by Defendant Angelo Everett, ("Everett"), and the Government's opposition thereto. (Docket Nos. 283; 298). Everett seeks suppression of heroin and fentanyl which was seized by state police from a vehicle he was driving as well as incriminating statements he made after being arrested for possession with intent to deliver controlled substances. (Docket No. 283). He claims that his Fourth Amendment rights to be free from warrantless searches and seizures were violated because law enforcement allegedly seized the evidence after he withdrew the consent he had previously provided to a state trooper to search the vehicle. (*Id.*). In its response, the Government maintains that Everett's motion should be denied without a hearing because he has not set forth a colorable claim that his Fourth Amendment rights were violated and there are no contested facts between the parties which would materially bear on the disputed legal issues. (Docket No. 298). After careful consideration of all of the parties' submissions, and for the following reasons, Everett's Motion to Suppress [283] is denied.

II.   BACKGROUND

   *A. Facts*

Everett is one of eleven defendants charged in this multi-defendant heroin and fentanyl trafficking case. (Docket No. 214). Specifically, the Government alleges that he committed two offenses, i.e.: one count of conspiracy to distribute and possess with intent to distribute 1 kilogram or more of heroin and a detectable amount of fentanyl, in violation of 21 U.S.C. § 846, for conduct occurring from in and around January 2016 and continuing thereafter to in and around September 2016, (Count 1); and one count of possession with intent to distribute one hundred (100) grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(i), for conduct occurring on or about August 29, 2016, (Count 3). (Docket No. 214). On July 19, 2017, the Government filed an Information Charging Prior Offense Pursuant to 21 U.S.C. § 851, advising that Everett was previously convicted of a controlled substance offense in violation of 35 Pa.C.S. § 780-113(a)(30) in the Court of Common Pleas of Blair County, Pennsylvania, for which he was sentenced to a period of 24 months to 48 months' incarceration. (Docket No. 226). Based on the filing of such Information, the recidivist penalties set forth in section 841 and noted in the Superseding Indictment Memorandum are applicable in Everett's case. (Docket No. 215). Hence, the potential penalties upon a conviction for Count 1 include a mandatory term of incarceration of 20 years and up to a life and the potential penalties upon a conviction for Count 3 include a mandatory term of incarceration of 10 years and up to life. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(B)(i), 846, 851.

Everett seeks to suppress the evidence seized from his vehicle during a warrantless encounter with state troopers on August 29, 2016. (Docket No. 283). The seized evidence included: a black plastic bag containing approximately 2 pounds of raw heroin; and, a small clear

plastic bag containing approximately 2 grams of suspected fentanyl. (Docket No. 298-1 at 4). Such evidence forms the basis of the possession with intent to distribute charge at Count 3 and also supports the conspiracy charge at Count 1. (Docket No. 214).

The uncontested facts set forth in Everett's motion establish the following. (*See* Docket No. 283; 298-1; 298-2; 298-3). At around 2:00 a.m. on August 29, 2016, Everett was driving his black Toyota Camry westbound on the Pennsylvania Turnpike with two passengers in the vehicle. (Docket No. 283 at ¶ 2). He was pulled over near mile marker 88 in Westmoreland County by Trooper Mike Volk for a tint violation. (*Id.*). Trooper Volk was called to another incident and contacted Trooper Justin Coda to complete the necessary paperwork for the traffic stop. (*Id.*). Trooper Coda arrived on the scene; provided a written warning to Everett for the tint violation; and advised him that he could smell marijuana. (*Id.* at 2). Trooper Coda asked Everett for permission to search the car. (*Id.*). "Defendant gave oral consent to search the vehicle." (*Id.*). A written consent form was neither provided by the Trooper nor signed by Defendant. (*Id.*). One of Everett's passengers was found to have marijuana on her person. (*Id.*).

According to Everett:

> Additional troopers arrived on the scene and began to search Everett's car. After approximately forty-five minutes to an hour, Everett became impatient and advised the troopers that he no longer permitted them to continue searching the vehicle and that he wanted possession of the car so that he and his passengers could leave. Everett several times repeated that he revoked his consent and that he wanted to leave. The troopers ignored Everett's statements and continued the search of the vehicle. The suspected evidence was not discovered until well after Everett withdrew his consent to search the car.
>
> Everett was arrested and taken into custody based on the unlawful discovery of drug evidence in the car. He made statements following his arrest which were incriminatory.

(*Id.* at ¶¶ 3, 4).

3

In response to Everett's motion, the Government has supplied the Court with three reports prepared by law enforcement officers related to this incident: (1) a Pennsylvania State Police Incident Report dated 9/1/16 prepared by Trooper Coda; (2) a Drug Enforcement Administration ("DEA") Report of Investigation dated 9/8/16 prepared by Special Agent Timothy Nave; and (3) a DEA Report of Investigation dated 9/22/16, also prepared by Special Agent Nave. (Docket Nos. 298-1; 298-2; 298-3). The Government points out that these reports do not mention Everett withdrawing consent to search his vehicle, telling the officers to stop searching the car or making any other similar statements. (*Id.*). Everett did not file a Reply brief and aside from the lack of facts regarding his alleged withdrawal of consent, he has not contested any of the other information set forth in these reports. (*Compare* Docket No. 283 *with* Docket Nos. 298-1; 298-2; 298-3).

Trooper Coda's report describes his role in the traffic stop, and provides more specific information than is included in Everett's motion. (Docket No. 298-1). In this regard, Trooper Coda notes that when he arrived on the scene, he approached the vehicle on the passenger side, observed the tinted windows, and "immediately detected the odor of marijuana emanating from the vehicle." (*Id.* at 4). He "noticed that all 3 occupants were extremely nervous." (*Id.*). The occupants told Trooper Coda that they were returning from New York where they had stayed for the weekend but he did not observe an appropriate amount of luggage in the vehicle for a 3 person trip for the weekend, including that there was no luggage in the passenger compartment of the vehicle. (*Id.*).

Trooper Coda obtained identification from the occupants, Everett and his two female passengers, India Bryant and Ikea Lewis, and ran their information through CLEAN/NCIC to conduct background checks. (*Id.* at 2-4). Trooper Coda then returned to the vehicle, asked

4

Everett to exit, returned all of the occupants' paperwork to him and issued him a written warning regarding the tint violation. (*Id.* at 4). Trooper Coda advised Everett that he smelled marijuana and requested consent to search the car. (*Id.*). Everett granted him verbal consent to search the vehicle. (*Id.*).

Trooper Volk and Trooper John Isoldi responded to the scene around that time and assisted with the search of the vehicle. (Docket No. 298-1 at 4). During the search, Trooper Isoldi "discovered what appeared to be an aftermarket wire under the passenger seat." (*Id.*). Trooper Coda states that he and Trooper Volk agreed that it appeared to be an aftermarket wire, which they traced to a small box under the seat to what "appeared to be an aftermarket compartment." (*Id.*). They were unsuccessful in several attempts to "jump" the wires but were able to gain access by removing the passenger seat from the vehicle. (*Id.*). The search of the compartment led to the seizure of a black plastic bag containing approximately 2 pounds of raw heroin and a small clear bag containing approximately 2 grams of suspected fentanyl. (*Id.*). A small plastic bag of marijuana was also recovered from Bryant during a search incident to arrest. (*Id.*). According to Trooper Coda, he read all three of the individuals their *Miranda* rights and "Everett related that the heroin was his without being asked." (*Id.*). They were then charged, processed and arraigned at Westmoreland County Jail. (*Id.*). Trooper Coda notes that the traffic stop started at 1:59 a.m. and concluded at 5:00 a.m. (*Id.*).

Special Agent Nave's reports relate, among other things, that:

- at the time of the interdiction by state police, Everett was one of the targets of a DEA investigation into his and his associates' heroin trafficking activities;
- his cellular telephone communications (calls and texts) were being intercepted as of at least August 16, 2016 under a Title III authorization issued by the Hon. Arthur J. Schwab;

5

- such communications indicated that Everett would be traveling to Washington D.C. and then to the New York area to obtain a heroin supply between August 26 and 28, 2016;
- electronic surveillance was being conducted outside Everett's residence on August 26, 2016, where his car was observed leaving late in the evening; and,
- cell tower information was being intercepted from the contacts made by Everett's cell phone, providing his whereabouts to law enforcement officers during his travels to Washington, D.C., and New York, and his return to Pennsylvania.

(Docket No. 298-3). Ultimately, the traffic stop conducted by the state troopers was made at the request of SA Nave who was investigating Everett's drug trafficking and was aware that he had made the stop in New York to obtain the heroin and was in the process of returning to Pennsylvania on a route through New Jersey. (*Id.*). Special Agent Nave's reports further delineate the chain of custody of the seized evidence and the approximate weights of each of the controlled substances which were seized, i.e., 181.5 grams of heroin and 18.9 grams of marijuana. (Docket No. 298-2).

B. *Relevant Procedure*

Defendant filed the instant motion to suppress on August 18, 2017. (Docket No. 283). The Government submitted its response in opposition on August 26, 2017. (Docket No. 298). Pursuant to the Local Criminal Rules, a reply brief was due to be filed within 14 days of the response, but Defendant declined to file a Reply. *See* Pa.W.D. LCrR 12.D. ("The movant may file and serve a reply memorandum within fourteen days after service of the response, unless the time period is otherwise extended by the Court."). As the matter has been fully briefed, it is now ripe for disposition.[1]

---

[1] The Court notes that several codefendants have been granted extensions of time to file pretrial motions in this matter, with filing deadlines set in November and December of 2017. (*See* Docket Nos. 297 (Jenkins Everett's pretrial motions due 12/4/17); 305 (Shyann Johnson's pretrial motions due 11/6/17); 307 (Ada Johnson's pretrial motions due 11/6/17)). This motion is ripe as none of the codefendants have joined the motion and it appears to pertain to only Angelo Everett's individual case.

III. DISCUSSION

Everett argues that the evidence seized from his vehicle during the traffic stop was obtained in violation of the Fourth Amendment's proscription of warrantless searches and seizures. (Docket No. 238). The Government maintains that the evidence was appropriately seized by law enforcement. (Docket No. 298). Before addressing the merits of the parties' positions, the Court must initially resolve the threshold dispute of whether to conduct an evidentiary hearing on Everett's motion or not. Everett suggests that the evidence presented at such a hearing will demonstrate that he clearly and unequivocally withdrew the consent he had previously provided to the state trooper to search his vehicle. (Docket No. 283). The Government counters that Everett has not stated a colorable claim because the facts proffered by Everett in his motion demonstrate that the responding officers had probable cause to search the car under the automobile exception, such that any factual disputes concerning whether consent was revoked or not are immaterial to the disposition of Everett's motion. (Docket No. 298). The Court agrees with the Government that Everett's motion should be denied without a hearing.

Following the filing of a motion to suppress by a defendant, it is within the Court's discretion to decide if an evidentiary hearing should be scheduled. FED. R. CRIM. P. 12(c). To require a suppression hearing, "a suppression motion must raise 'issues of fact material to the resolution of the defendant's constitutional claim.'" *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (quoting *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)). "In addition, the suppression motion must be 'sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress.'" *United States v. Stanton*, Crim. No. 11-57, 2012 WL 4815402, at *3 (W.D. Pa. Oct. 10, 2012)

(quoting *Hines*, 628 F.3d at 105). The burden of proof is on the defendant and is not shifted to the Government unless the defendant establishes a colorable basis for the claim. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. CONST. AMEND. IV; *see also United States v. Ubiles*, 224 F.3d 213, 216 (3d Cir. 2000). Warrantless searches are *per se* unreasonable subject only to a few specifically established and well delineated exceptions. *Horton v. California*, 496 U.S. 128, 133 (1990). Because no warrant authorized the search here, the burden is on the Government to prove by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant requirement. *United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992). Two such exceptions have been raised by the parties, i.e., the consent and automobile exceptions. The consent exception generally authorizes a warrantless search if the subject knowingly and voluntarily consents to a search of the vehicle. *See United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003). "The automobile exception permits vehicle searches without a warrant if there is 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014) (citations omitted). Any evidence obtained pursuant to a search that does not meet a recognized exception to the warrant requirement must be suppressed as "fruit of the poisonous tree." *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

It is this Court's opinion that Everett has not raised a material issue of fact in his motion to suppress and his implicit request for a hearing is denied. *See Hines*, 628 F.3d at 105. In this regard, Everett does not contest the legality of: the traffic stop; the initial detention attendant to

same; or, the initial search of his vehicle to which he admits he orally agreed.[2] (Docket No. 283 at ¶ 6 ("It is acknowledged by Everett that he initially consented to the search of his vehicle.")). He also concedes that the trooper smelled marijuana upon approaching the vehicle and that his passenger was found to be in possession of marijuana on her person. (Docket No. 238). Everett's sole claim is that his Fourth Amendment rights were violated because he withdrew his consent to search the vehicle after a period of approximately 45 minutes had elapsed and at a time which was prior to the troopers' discovery of the challenged evidence. (*Id.* at ¶¶ 6, 9, 10). Whether this actually occurred presents the only factual dispute between the parties. (*See* Docket Nos. 283, 298). With that said, Everett has not provided any evidentiary support for his assertion that he revoked consent but "submit[s] that the evidence in this case will show that Everett clearly and unequivocally withdrew his consent to search his vehicle but was disregarded by law enforcement officers who were conducting the search," implying that he will prove same at a hearing. (Docket No. 283 at ¶ 9). However, this factual dispute is immaterial to the disposition of the suppression motion because the facts proffered by Everett in support of his motion are sufficient to demonstrate that Trooper Coda had probable cause to search the vehicle under the automobile exception. Again, the Government retains the burden to demonstrate that <u>one</u> of the exceptions to the warrant requirement applies, *Herrold*, 962 F.2d at 1137, and disputed facts concerning the application of the legal test for a different exception to the warrant requirement will not "affect the outcome of the motion to suppress." *Hines*, 628 F.3d at 105 (citations omitted). The Court now turns to its analysis.

The United States Court of Appeals for the Third Circuit has recognized the "broad sweep of the automobile exception," pursuant to which a vehicle may be searched without a

---

[2] The Court notes that the Government does not contest that Everett has a reasonable expectation of privacy in his vehicle. (*See* Docket No. 298).

warrant upon a showing of probable cause that evidence of a crime may be located in the vehicle. *Donahue*, 764 F.3d at 300. As the Court of Appeals explains,

> the automobile exception includes two important elements specific to that exception: First, "[i]f probable cause justifies the search ..., it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." [*United States v. Ross*, 456 U.S. 798, 825 (1982)]. Second, probable cause does not dissipate after the automobile is immobilized because the exception does not include an exigency component. *Maryland v. Dyson*, 527 U.S. 465, 466, (1999). As a result, the government can search an impounded vehicle without a warrant even though it has secured the vehicle against the loss of evidence and it has the opportunity to obtain a warrant for the search. *See Michigan v. Thomas*, 458 U.S. 259, 261 (1982); *see also United States v. Johns*, 469 U.S. 478, 486–87 (1985) (extending the rule to closed packages seized from vehicles).

*Donahue*, 764 F.3d 293, 300 (3d Cir. 2014). The probable cause inquiry "is entirely objective," *Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014), and is "commonsense," "practical," and "nontechnical;" it is based on the totality of the circumstances and is judged by the standard of "reasonable and prudent men." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983) (internal quotation marks and citations omitted). The Court evaluates "the events which occurred leading up to the ... search, and then ... [decides] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to ... probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). If there was a "fair probability that contraband or evidence of a crime" would have been found, there was probable cause for the search. *Gates*, 462 U.S. at 238. The Court of Appeals has also held that "[i]t is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (citing *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000)).

Applying this precedent to the totality of the circumstances proffered in Everett's motion reveals that an objectively reasonable law enforcement officer established a "fair probability that contraband or evidence of a crime" would be found in Everett's vehicle, sufficiently substantiating a finding of probable cause. *See Donahue*, 764 F.3d at 300. To reiterate, the facts admitted by Everett include that: he was driving westbound on the Pennsylvania Turnpike in Westmoreland County in a Toyota Camry with excessively tinted windows in violation of the law; it was around 2:00 a.m., very early on a Monday morning and presumably dark; and the responding trooper smelled marijuana upon approaching the vehicle, which was pulled over on the side of the highway. (Docket No. 283). Everett also does not contest that the trooper actually smelled marijuana; admits that marijuana was found on the person of one of his passengers; and has not pointed to any other potential source of the marijuana odor. (*Id.* at ¶ 2). Overall, such facts are sufficient to warrant further investigation by a reasonable law enforcement officer and authorize a warrantless search for illegal contraband –namely marijuana – within "every part of the vehicle and its contents." *Donahue*, 764 F.3d at 300; *see also e.g.*, *Ramos*, 443 F.3d at 308; *United States v. Ushery*, 400 F. App'x 674, 676 (3d Cir. 2010) ("Given the District Court's finding that Officers Maley and Lindsley, who both had encountered marijuana on the job on numerous occasions, smelled burnt marijuana coming from Ushery's car, the police had probable cause to search the car."); *United States v. Jackson*, 682 F. App'x 86, 88 (3d Cir. 2017) (citations omitted) ("Case law within this Circuit and others has concluded that so long as the smell of marijuana can be particularized to a specific person or place, it is sufficient to establish probable cause."); *United States v. Kennedy*, 2014 WL 6090409, at *13-14 (W.D. Pa. Nov. 13, 2014) (odor of marijuana emanating from vehicle, among other things, authorized search of trunk). The only disputed facts – Everett's purported withdrawal of consent

– have no bearing on this analysis because such facts pertain to the application of the consent exception which the Court need not reach. *See Hines*, 628 F.3d at 105. In addition, Everett's derivative arguments seeking to suppress his statements as alleged fruit of the poisonous tree of an illegal search must be overruled. Accordingly, Everett's motion must be denied without a hearing.

As noted, the Court would deny the suppression motion without resorting to any of the evidence presented by the Government, i.e., the reports prepared by Trooper Coda and Special Agent Nave. (*See* Docket Nos. 298-1; 298-2; 298-3). However, to the extent that such evidence – none of which has been contested by Everett – is considered, it would further bolster the probable cause finding. In this regard, Trooper Coda reported that: he "immediately detected the odor of marijuana emanating from the vehicle"; the occupants of the vehicle appeared "extremely nervous"; they told him that they were returning from New York where they had spent the weekend but he did not see any luggage in the passenger area of the vehicle; the troopers observed an aftermarket wire beneath the passenger seat of the vehicle which they were unable to "jump"; and traced the wire to an aftermarket compartment located beneath the seat. (Docket No. 298-1). Hence, such evidence lends further support for the reasonableness of the actions of the law enforcement officers in continuing the search of the vehicle to the point of opening the compartment and seizing the heroin found therein.

The Government also alternatively invokes the collective knowledge doctrine to justify the search and seizure which was effectuated by the troopers based on the request of Special Agent Nave, who was investigating Everett's heroin trafficking activities at the time, including through Title III intercepts and electronic surveillance. (Docket No. 298). The collective knowledge doctrine provides that "the knowledge of one law enforcement officer is imputed to

the officer who actually conducted the seizure, search, or arrest," *United States v. Gardenhire*, 2017 WL 1022578, at *5 (W.D. Pa. Mar. 16, 2017) (citations omitted), and allows officers "'to act on the strength' of work done by fellow officers" when they are engaged in joint law enforcement activities." *United States v. Gonzalez*, 630 F. App'x. 157, 161 (3d Cir. 2015) (quoting *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)). In such circumstances, the knowledge of the officer conveying the information may be relied upon by the officers conducting the search and seizure regardless of "'whether those relying on the [information] were themselves aware of the specific facts which led their colleagues to seek their assistance.'" *Gonzalez*, 630 F. App'x. at 161 (quoting *United States v. Hensley*, 469 U.S. 221, 231 (1985)). Certainly insofar as the information possessed by Special Agent Nave concerning the DEA investigation of Everett's narcotics trafficking activities was also considered as part of the Court's the probable cause calculus, a finding that there is a fair probability that illegal contraband would be located in Everett's vehicle is fully supported by this record.

IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress [283] is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: September 26, 2017

cc/ecf: All counsel of record

      Angelo Everett c/o Donna McClelland, Esq.